**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff-Respondent,** | ) | |
| | ) | |
| **v.** | ) | **No. CR-23-227-R** |
| | ) | |
| **ERICK GACHUHI WANJIKU,** | ) | |
| | ) | |
| **Defendant-Petitioner.** | ) | |

## ORDER

Before the Court is Defendant-Petitioner Erick Gachuhi Wanjiku's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody [Doc. No. 186]. The Government responded in opposition [Doc. No. 207] and Petitioner replied [Doc. No. 212]. The Court has considered the arguments, relevant authorities, and record,[1] and for the reasons explained below, finds no hearing is needed, no expansion of the record is necessary, and the Motion should be denied.

## BACKGROUND

Petitioner Wanjiku was convicted of a felony in 2022. *State of Oklahoma v. Wanjiku*, Dist. Ct. of Tulsa Cnty., Okla., No. CF-2019-4181 (2019). After his sentence expired, he

---

[1] "Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall . . . grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." 28 U.S.C. § 2255(b). *See also United States v. Marr*, 856 F.2d 1471, 1472 (10th Cir. 1988) (citation omitted) (evidentiary hearing not required where "case record conclusively shows the prisoner is entitled to no relief"). The Court finds the existing record conclusively shows the Petitioner is not entitled to relief and thus no evidentiary hearing is needed. *United States v. Lopez*, 100 F.3d 113, 121 (10th Cir. 1996).

1

was released into the custody of Immigration and Customs Enforcement because his felony conviction called into question his lawful permanent resident status [Doc. No. 89, Final Pre-Sentence Investigation Rep., ¶ 6; Doc. No. 1, Crim. Compl., p. 3 n.1]. On May 8, 2023, Petitioner arrived at the Enforcement and Removal Operations Office in Oklahoma City. PSR, ¶ 6. Petitioner was later removed from his cell to take fingerprints and sign paperwork, but due to his noncompliance, he was handcuffed. *Id.* Shortly thereafter, Petitioner kicked ICE Officer C.V. near his left knee and lunged toward ICE Officer M.C., biting him in the chest. *Id.* The incident was recorded on surveillance cameras and another ICE officer's iPhone [Doc. No. 129, Trial Tr., 31]. PSR, ¶ 8.

Petitioner was later tried and found guilty of two counts of Assault on a Federal Officer pursuant to 18 U.S.C. § 111 [Doc. No. 50]. In January of 2024, he was sentenced to 36 months' imprisonment [Doc. Nos. 96-98]. Petitioner filed this pro se motion pursuant to 28 U.S.C. § 2255 in October of 2025,[2] asserting four overarching grounds for relief: (1) ineffective assistance of trial counsel, (2) ineffective assistance of appellate counsel, (3) prosecutorial misconduct, and (4) this Court's bias and abuse of discretion.

## DISCUSSION

"A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction

---

[2] Because Petitioner is proceeding pro se, the Court liberally construes his arguments. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). But it is not "the proper function of the district court to assume the role of advocate for the pro se litigant." *Id.*

to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). "Section 2255 is available to correct errors of constitutional or jurisdictional dimension, or fundamental errors which result in a complete miscarriage of justice." *Brown v. United States*, 34 F.3d 990, 991 (10th Cir. 1994); *see also United States v. Addonizio*, 442 U.S. 178, 184-86 (1979).

## I.    Timeliness

The Government argues Petitioner's Motion is untimely. There is a one-year limitations period for § 2255 motions which, in most cases, runs from "the date on which the judgment of conviction becomes final." § 2255(f)(1). A conviction becomes final upon completion of direct review. *United States v. Burch*, 202 F.3d 1274, 1277 (10th Cir. 2000). Petitioner's conviction became final on December 9, 2024, when the Supreme Court denied his Petition for Writ of Certiorari [Doc. No. 157]. Petitioner filed his § 2255 Motion in October 2025, within the one-year limitations period. Accordingly, his Motion is timely.

## II.    Ineffective Assistance of Counsel

### a.  Legal Standard

When ineffective assistance of counsel is the basis of a § 2255 claim, the defendant must satisfy the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Under this test, a defendant must show both that his "counsel's performance was deficient" and that "the deficient performance prejudiced the defense." *Id.*

3

A defendant can establish the first prong by showing that counsel performed below the level expected from a reasonably competent attorney. *Id.* at 687-88. In evaluating counsel's performance, courts should make "every effort . . . to eliminate the distorting effects of hindsight" and "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.

To establish the second prong, a defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id.* The likelihood of a different result "must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 112 (2011). "The focus of the inquiry is 'whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair.'" *United States v. Deiter*, 890 F.3d 1203, 1209 (10th Cir. 2018) (quoting *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993)).

> Every effort must be made "'to evaluate the conduct from counsel's perspective at the time,'" and "'[c]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" *Dever v. Kan. State Penitentiary*, 36 F.3d 1531, 1537 (10th Cir. 1994) (quoting *Strickland*, 466 U.S. at 689). To overcome this strong presumption, a defendant "bears a heavy burden." *Fox v. Ward*, 200 F.3d 1286, 1295 (10th Cir. 2000).

*United States v. Challoner*, 583 F.3d 745, 749 (10th Cir. 2009) (citations modified).

If a defendant cannot show either "deficient performance" or "sufficient prejudice," his claim of ineffective assistance fails. *Strickland*, 466 U.S. at 700.

4

### b. Petitioner's Trial Counsel

First, Petitioner asserts his trial counsel was ineffective by failing to file a motion to suppress evidence. According to Petitioner, ICE (1) illegally arrested him pursuant to a detainer that was later cancelled and (2) used illegal force to obtain his thumbprint on processing forms. Petitioner claims this conduct violated his Fourth Amendment right to be free from unreasonable searches and seizures. Thus, Petitioner says, the evidence of his kicking and biting ICE officers after his illegal arrest and/or ICE's illegal force was "fruit of the poisonous tree" that his trial counsel should have moved to suppress. *See Wong Sun v. United States*, 371 U.S. 471, 488 (1963).

Petitioner's argument does not bear fruit. "Evidence of a separate, independent crime initiated against police officers in their presence after an illegal entry or arrest will not be suppressed under the Fourth Amendment." *United States v. Waupekenay*, 973 F.2d 1533, 1538 (10th Cir. 1992). In *Waupekenay*, the Tenth Circuit noted that "[i]n assault, resisting arrest, disorderly conduct, and weapons-related trials, [] courts have uniformly rejected motions to suppress arising from skirmishes" "subsequent to an unlawful search or seizure." *Id.* at 1537 (collecting cases).

> We conclude that Mr. Waupekenay did not have a legitimate, reasonable expectation of privacy when he initiated criminal activity—assault—in the presence of the police officers within [his] trailer. Once Mr. Waupekenay was aware that the police officers were present in his home and were observing him, he could not have had a reasonable expectation of privacy for any actions initiated *subsequently* to that time in their presence. He obviously intended for the police to see him aim a semi-automatic weapon at them. Thus, he could not have had a legitimate expectation of privacy in that action. *See Katz v. United States*, 389 U.S. 347, 351 (1967) ("What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection.") (citations omitted).

*Id.* at 1537 (citation modified).

Whether his arrest[3] or the actions taken by ICE to obtain his thumbprint[4] were illegal or not, Petitioner could not have had a reasonable expectation in his privacy when he initiated the assault in plain view of ICE officers in the ERO. Petitioner has failed to establish his trial counsel performed below the level expected of a reasonably competent attorney by declining to file a motion to suppress the evidence of the assault.

Petitioner next argues his trial counsel was ineffective by failing to subpoena certain witnesses to testify at trial. "Generally, the decision whether to call a witness rests within the sound discretion of trial counsel." *Jackson v. Shanks*, 143 F.3d 1313, 1320 (10th Cir. 1998) (citing *United States v. Snyder*, 787 F.2d 1429, 1432 (10th Cir. 1986)). And

---

[3] In any event, Petitioner has failed to adequately argue his arrest/detention was unconstitutional. The Court liberally construes Petitioner's pro se petition, but it will not "fashion [Petitioner's] arguments for him where his allegations are merely conclusory in nature and without supporting factual averments." *United States v. Fisher*, 38 F.3d 1144, 1147 (10th Cir. 1994) (citing *Hall*, 935 F.2d at 1110).

[4] Throughout his Motion, Petitioner insists ICE could not use force to obtain his fingerprints on immigration paperwork. He primarily relies on ICE Policy to make this argument. But that Policy, a copy of which Petitioner attached to his Motion, states that "necessary and reasonable force may be used to obtain fingerprints from noncompliant individuals" on certain forms, including an I-385 [Doc. No. 186-13, at p. 3]. An I-385 is an Alien Booking Record form. *Id.* The Policy further provides that "[b]efore attempting to obtain a fingerprint from a noncompliant individual, ICE . . . will first place the individual in appropriate restraints . . ." which generally entails "securing an individual's hands behind his or her back." *Id.* at p. 4. At trial, ICE Officer M.C. testified that Petitioner was required to complete an I-385 form and when Petitioner was noncompliant, he was placed in handcuffs. Trial Tr., 29-30, 45-46. Petitioner's argument that ICE violated its Policy by handcuffing him to obtain thumbprints on an I-385 is a nonstarter—based on the record before this Court, the Policy permitted officers to use reasonable force, including handcuffs, to attempt to obtain Petitioner's thumbprint on the I-385 form.

"[g]enerally, counsel's failure to call witnesses whose testimony would be corroborative or cumulative of evidence already presented at trial is not deemed constitutionally deficient." *Snow v. Sirmons*, 474 F.3d 693, 729 (10th Cir. 2007). And even if trial counsel makes an unreasonable decision not to call a witness, "'[t]o affirmatively prove prejudice, [Petitioner] . . . must show not only that the testimony of [an] uncalled witness[] would have been favorable, but also that [the] witness [] would have testified at trial.'" *Id.* at 730 n.42 (quoting *Lawrence v. Armontrout*, 900 F.2d 127, 130 (8th Cir. 1990)).

Petitioner asserts uncalled witness ICE Officer M.S.D. would have impeached Officer M.C's trial testimony that Petitioner was not threatened with force. At trial, Officer M.C. testified he was not aware of any threats or intimidating statements made to Petitioner. Trial Tr., 40. Petitioner compares this with Officer M.S.D.'s affidavit [Doc. No. 186-10], in which M.S.D. wrote that he "explained to Wanjiku that his refusal to comply with [the fingerprinting] requirement could result in his fingerprints being forcibly obtained."

The Court finds it difficult to credit Petitioner's interpretation of the facts. Even if Petitioner had shown Officer M.S.D. would have testified at all, Officer M.S.D. informing Petitioner that force may be used to take his fingerprints is not the same as threatening Petitioner with physical or other harm. The record indicates M.S.D. was merely informing Petitioner of ICE's Policy of permitting reasonable force to obtain noncompliant individuals' fingerprints. *See* Doc. No. 186-13. Petitioner has not demonstrated his trial counsel acted unreasonably in choosing not to call Officer M.S.D. to testify at trial.

But even if M.S.D.'s words to Petitioner could be construed as a threat, Petitioner has not demonstrated that M.S.D.'s testimony would have been favorable to him or that he

was prejudiced by the lack of the testimony. The jury saw ample evidence—including video surveillance—indicating Petitioner initiated the physical assault. Petitioner has not demonstrated that, but for the lack of Officer M.S.D.'s testimony, there is a reasonable probability the outcome of his trial would have been different.[5]

Petitioner asserts Homeland Security Investigations Special Agents C.B. and R.B. (who investigated the assaults on Officers M.C. and C.V.) would have testified that force was being used when the assaults occurred [Doc. No. 186-5, Grand Jury Test. of Special Agent R.B., 7; Doc. No. 138, Prelim. Hr'g Tr., 15-16]. The Court has examined the record and cannot find that R.B.'s testimony would have been helpful to Petitioner. It would also have been largely cumulative of what the jury saw or heard at trial. *See* Grand Jury Test. of Special Agent R.B., 5-7, 9. The same can be said for C.B.'s testimony. Though she testified Policy was to obtain a thumbprint by force if an individual refuses, she also clearly stated ICE Officers were not aggressive when attempting to obtain Petitioner's thumbprint. Prelim Hr'g Tr., 15. She also indicated Petitioner reacted to officers putting ink on his thumb by kicking Officer C.V. *Id.* at 16. Though Officer C.B. was questioned by trial counsel at the preliminary hearing regarding the number of officers and amount of force involved in restraining Petitioner after the initial kick, *id.* at 15-19, Petitioner has failed to demonstrate that he was prejudiced by the lack of C.B.'s testimony on these issues at trial. The jury saw ample evidence that Petitioner initiated the assault. His counsel was not

---

[5] Petitioner himself testified in a manner conflicting with that of the officers who testified at trial and the affidavits of the officers who did not. *See* Trial. Tr., 118-19 (testifying that ICE officers told Petitioner they were "allowed to use up to deadly force" to get him to sign paperwork).

unreasonable for declining to call R.B. or C.B. as witnesses, and even if she was, Petitioner has failed to demonstrate that he was prejudiced by the absence of their testimony.

Petitioner asserts the uncalled witnesses could also have provided information regarding why he was at the ERO, why his thumbprints were needed, why he was handcuffed, and why ICE officers could use force to obtain thumbprints. Such testimony is irrelevant to whether he assaulted federal officers. This Court engaged in several discussions with trial counsel and the Government and indicated that beyond a general explanation of why Petitioner was at the ERO, his immigration status should not be considered and was largely irrelevant to whether Petitioner assaulted federal officers. Mots. in Lim. Tr., 8-10, 15-21; Trial Tr., 4-5, 65-68. The Court instructed the jury accordingly. Trial Tr., 20, 161; Jury Instrs., 21. Moreover, when trial counsel's cross-examination of the ICE Officers threatened to elicit testimony regarding why Petitioner did not want to sign immigration paperwork, the Court cabined her on relevance grounds. *Id.* at 55-56.

Trial counsel was thus not unreasonable for declining to call witnesses to testify about Petitioner's immigration status, detainers, etc., especially considering the irrelevance of those issues to the assault charges. Moreover, even if the jury had heard this testimony, Petitioner has not demonstrated a reasonable probability it would have changed his trial's outcome. As stated above, the jury saw and heard abundant evidence that Petitioner initiated the assault against the ICE officers. The testimony Petitioner claims the uncalled witnesses would have provided would not have undermined the facts at trial or supported a defense. Accordingly, he has not established his trial counsel was ineffective for declining

9

to call witnesses who would have provided cumulative, unhelpful, and/or irrelevant testimony.

Petitioner also argues his trial counsel was ineffective by failing to investigate. First, he insists immigration forms that he refused to sign are relevant and material and should have been investigated by counsel. Petitioner provides no support for his assertion that his trial counsel did not examine such forms. In any event, the forms are irrelevant to whether he assaulted federal officers and he has failed to establish he was prejudiced by trial counsel's alleged failure to investigate such forms.

Next, Petitioner proclaims his trial counsel failed to investigate the full videos of his time in the ERO (surveillance footage of Petitioner both inside and outside his cell and an iPhone video of the assault). He insists only portions of the videos were provided by the Government but does not support these assertions, which he has made several times during this action [Trial Tr., 7; Doc. No. 56, Mot. for New Tr.; Doc. No. 162, Mot. to Compel; Doc. No. 192, Mot. to Compel].

The Government has already stated all videos have been provided to Petitioner. *See* Doc. No. 58; Doc. No. 207; Doc. No. 137, Voir Dire Tr., 7-8. The Court has also already found the full video of Petitioner inside his cell was provided and was not favorable to Petitioner [*See* Doc. No. 63].[6] Petitioner has offered no support for his vehement claims that more video evidence exists. Petitioner's trial counsel could not have acted

---

[6] After Petitioner's trial, the Government learned video footage from inside Petitioner's cell existed. Doc. No. 58. This Court has previously found it contained nothing exculpatory to Petitioner. *See* Doc. No. 63.

unreasonably by failing to investigate something that does not exist, nor has Petitioner credibly asserted that even if the videos did exist, they would have had any effect on the outcome of his trial.

Next, Petitioner argues trial counsel was ineffective by failing to object to evidence obtained in violation of his Fourth Amendment rights. This argument has already been rejected by the Court.

Petitioner also argues trial counsel was ineffective by failing to object to this Court's "suggest[ion] to misrepresent to the jury the basis of petitioner's presence at the ICE offices on May 8, 2023." Doc. No. 212, at p. 12. This argument seems to be premised on the fact that the detainer pursuant to which Petitioner was being held at the ICE offices was later cancelled. Such information is irrelevant to the assault. The Court accordingly cabined counsel's ability to elicit testimony regarding Petitioner's beliefs that the detainer was invalid. *See* Mots. in Lim. Tr., 19-20 (The Court: "I'll advise the jury . . . that [the reason Petitioner was at the ICE facility] shouldn't be considered in regard to whether or not there was an assault [].").; Trial Tr., 55-56 (cabining, on relevance grounds, counsel's attempts to ask Officer M.C. whether Petitioner indicated he had concerns about his detainer's legality). The same goes for Petitioner's arguments that counsel should have objected to the Court's exclusion of evidence regarding ICE policies.

Counsel made many attempts to bring up Petitioner's immigration status and issues relevant to it and did not act unreasonably by "failing to object" to the Court's determinations that such information was largely irrelevant to the assault. And even if counsel somehow did act unreasonably, Petitioner has failed to indicate how he was

prejudiced by her failures. The jury saw ample evidence of Petitioner's assault of the federal officers—his immigration status is largely irrelevant to that issue.

Petitioner also asserts trial counsel was ineffective by not objecting to the (1) Government's failure to provide a chain of custody of the surveillance/iPhone videos and (2) admission of the iPhone video through Officer M.C., who is not "an expert in video technology, nor did he record the video." Doc. No. 212, at p. 13. "When proffered evidence has distinctive characteristics which make it unique, readily identifiable, and relatively resistant to change, its foundation for admission may be established by testimony that the evidence is what its proponent claims it to be." *United States v. Mills*, 194 F.3d 1108, 1111-12 (10th Cir. 1999) (citing FED. R. EVID. 901).

The Court once again rejects Petitioner's conclusory and unsupported claims that the videos produced by the Government were tampered with or incomplete. Officer M.C., who was present while the videos were taken and witnessed what they recorded in real-time, testified (1) that he reviewed the iPhone video and surveillance video from outside Petitioner's detention cell and (2) the videos were a fair and accurate description of what he saw on May 8, 2023. Trial Tr., 31-34. This is sufficient testimony to authenticate/identify the videos. FED. R. EVID. 901(b)(1). Moreover, Petitioner has presented no credible claims to dispute that the videos are not "'readily identifiable,' 'with sufficient completeness to render it improbable that the original item has either been exchanged with another or been contaminated or tampered with.'" *Mills*, 194 F.3d at 1112 (quoting *United States v. Cardenas*, 864 F.2d 1528, 1531 (10th Cir. 1989)) (indicating testimony of witness that video is a fair and accurate description of what he saw was sufficient to authenticate video

12

evidence); *see also Cardenas*, 864 F.2d at 1531. Trial counsel was not unreasonable or ineffective for declining to make frivolous objections related to the videos on Petitioner's behalf.[7]

Petitioner insists trial counsel should have objected when the Court did not more specifically ask during voir dire whether any prospective jurors thought bias against immigrants might affect their ability to be fair and impartial. The Court asked the prospective jurors about (1) their experiences with immigration, (2) whether racial bias might impact their ability to be fair and impartial, and (3) issues the Court did not ask about but which might affect their ability to be fair and impartial. Voir Dire Tr., 21-22, 30. No jurors responded to any of those inquiries. *Id.*

> An attorney's actions during voir dire are considered to be matters of trial strategy. *Teague v. Scott*, 60 F.3d 1167, 1172 (5th Cir. 1995). A strategic decision cannot be the basis for a claim of ineffective assistance unless counsel's decision is shown to be so ill chosen that it permeates the entire trial with obvious unfairness. *Id.*

*Nguyen v. Reynolds*, 131 F.3d 1340, 1349 (10th Cir. 1997). Petitioner has failed to demonstrate trial counsel's failure to insist the Court question jurors specifically about

---

[7] Petitioner makes the conclusory assertion that by failing to object to admission of the iPhone video through Officer M.C., counsel deprived Petitioner of his right to confront a material witness to the case. Petitioner does not further support this conclusory argument. Construing Petitioner's argument liberally, Petitioner may be asserting that he was deprived of the opportunity to confront ICE Officer M.K., who filmed the iPhone video [Doc. No. 186-11]. Petitioner has not demonstrated how he was prejudiced by a lack of Officer M.K's testimony. As the Court said, Officer M.C.'s testimony was sufficient to authenticate the video. The jury saw and heard ample evidence of Petitioner's assault of the federal officers, and even if Officer M.K. had testified, Petitioner has not demonstrated such testimony would give rise to a reasonable probability that the outcome of his trial would have been different.

immigration bias (in addition to questions about racial bias, questions about their experiences with immigration, and multiple instructions not to consider Petitioner's immigration status) permeated the trial with unfairness.[8] The jury saw and heard ample evidence that Petitioner initiated and carried out an assault on federal officers. Petitioner has not indicated that but-for this perceived error by trial counsel, the outcome would have been different.

Petitioner also asserts his trial counsel failed to object to the Court giving an off-the-record and improper *Allen* charge to the jury outside Petitioner's presence. "An *Allen* charge is a supplemental instruction given to the jury and designed to encourage a divided jury to agree on a verdict." *United States v. LaVallee*, 439 F.3d 670, 689 (10th Cir. 2006) (quotation omitted). *Allen* charges may be improper where they "impose[] such pressure on the jury such that the accuracy and integrity of their verdict becomes uncertain." *Id.* (quotation omitted). Petitioner claims the *Allen* charge is recorded on the docket at Document 49. Doc. No. 212, at p. 16. Document 49 is a sealed record of the notes

---

[8] "The Supreme Court has stated also that asking potential jurors generally whether any grounds exist that would make them unable to sit fairly and impartially . . . coupled with the question about bias towards aliens, leaves 'little reason to believe that a juror who did not answer this general question would have answered affirmatively a question directed narrowly at racial prejudice.'" *United States v. Murry*, 31 F.4th 1274, 1289-90 (10th Cir. 2022) (quoting *Rosales-Lopez v. United States*, 451 U.S. 182, 193 n.8 (1981)). The Court finds the same would apply in reverse—the Court's questions about racial bias, combined with its general inquiry about other issues that may bear on impartiality, leaves little reason to believe a juror who did not answer either of those questions in the affirmative would have answered in the affirmative a question directed narrowly at immigration bias. Petitioner has therefore failed to establish his trial counsel acted unreasonably in not objecting to the form of the Court's questions to the jury, as well as to establish that he was prejudiced by her failure to do so.

exchanged between the Court and Jury during the trial. There was no *Allen* charge, and the Court is hard-pressed to see anything in the notes that could be construed as improper or coercive. Petitioner's trial counsel was thus not unreasonable for not objecting to these notes, and even if she was, Petitioner was not prejudiced by such a failure.

And finally, Petitioner asserts trial counsel was ineffective for failing to impeach Officer M.C.'s testimony with ICE Policy. Petitioner asserts that had trial counsel provided evidence of ICE's Policy, the jury would have learned ICE agents were not following the policy during the May 8th incident and this would have impeached Officer M.C.'s testimony. The Court has already addressed this issue—not only is whether ICE was following its Policy irrelevant to whether Petitioner assaulted federal officers, but ICE Policy does, in fact, permit reasonable force to obtain a thumbprint on an I-385 form. Furthermore, the record reflects trial counsel made several attempts to elicit testimony regarding ICE Policy from Officer M.C. Though the Court allowed counsel some leeway to draw Officer M.C.'s attention to ICE Policy regarding fingerprinting noncompliant individuals, the Court cabined her due to the lack of relevance to the assault. Trial Tr., 65-68. Moreover, the record reflects that though trial counsel asked Officer M.C. about the purpose of obtaining Petitioner's fingerprints (which might have led to testimony about the Policy), Officer M.C. instead testified Petitioner was handcuffed because of pre-assault indicators he had shown. *Id.* at 68-70. Even if trial counsel was somehow unreasonable for failing to adequately bring up ICE Policy at trial, Petitioner was not prejudiced by her failure to do so. Whatever the reason Petitioner was handcuffed, the jury saw overwhelming evidence that Petitioner initiated the assault against the federal officers.

15

Petitioner has failed to establish ineffective assistance of his trial counsel merits the vacation, setting aside, or correction of his sentence.

### c.  Petitioner's Appellate Counsel

> The showing required to prove ineffective assistance of appellate counsel is, if anything, more strict than for trial counsel:

> "Claims of appellate-counsel ineffectiveness are often based on counsel's failure to raise a particular issue on appeal. Appellate counsel who files a merits brief need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal. Although it is possible to bring a *Strickland* claim based on counsel's failure to raise a particular issue, it is difficult to demonstrate that counsel was incompetent."

*United States v. Lancaster*, No. CR-10-72-D, 2015 WL 8074300, at *3 (W.D. Okla. Dec. 4, 2015) (quoting *Upchurch v. Bruce*, 333 F.3d 1158, 1163 (10th Cir. 2003)). "[I]f the issue is meritless, its omission [on appeal] will not constitute deficient performance." *Upchurch*, 333 F.3d at 1164 (quotation omitted).

Petitioner asserts his appellate counsel was ineffective for failing to raise a claim regarding the Court's failure to question the jury about their opinions on immigrants. As the Court discussed above, Petitioner has failed to demonstrate lack of a specific question about immigration permeated the trial with unfairness. His appellate counsel was not unreasonable for declining to raise a meritless claim on appeal and he has failed to demonstrate the outcome of his appeal would have been different had appellate counsel done so. *See Mahdi v. Bagley*, 522 F.3d 631, 638 (6th Cir. 2008) ("Given that Mahdi's trial counsel were not ineffective, Mahdi cannot argue that he suffered prejudice from his

appellate counsel's failure to raise trial counsel's decision not to question jurors about religious and racial bias. No prejudice flows from the failure to raise a meritless claim.").

The Court also rejects Petitioner's claim that his appellate counsel was ineffective for failing to raise a claim that this Court gave a coercive *Allen* charge. The record reflects the Court did not give any *Allen* charge. Such a claim would have been meritless.

Finally, Petitioner argues his appellate counsel was ineffective for failing to withdraw. He insists he requested appellate counsel withdraw on May 30, 2024, but counsel continued to represent him against his wishes. Petitioner's record on appeal, *United States v. Wanjiku*, No. 24-6010 (10th Cir. 2024) [hereinafter "ROA"], reflects that he mailed a Motion to Remove Counsel to the Tenth Circuit on May 30, 2024, and it was docketed but not filed on June 11, 2024 [ROA, Doc. Nos. 64-1, 64-2]. Also on June 11, appellate counsel properly filed a "Motion to Withdraw as Defendant-Appellant's Appointed Appellate Counsel Pursuant to *Anders v. California*, 386 U.S. 738 (1967)" [ROA, Doc. No. 65]. Petitioner seems to be under the impression that this was improper. But *Anders* specifically states that "if counsel finds [his client's] case to be wholly frivolous, after a conscientious examination of it, he should so advise the court and request permission to withdraw. That request must, however, be accompanied by a brief referring to anything in the record that might arguably support the appeal." *Anders*, 386 U.S. at 744. After submission of an *Anders* brief, the

> client may then choose to submit arguments to the court. The Court must then conduct a full examination of the record to determine whether defendant's claims are wholly frivolous. If the court concludes after such examination that the appeal is frivolous, it may grant counsel's motion to withdraw and may dismiss the appeal.

*United States v. Calderon*, 428 F.3d 928, 930 (10th Cir. 2005) (citing *Anders*, 386 U.S. at 744) (internal citations omitted). This is exactly what happened during Petitioner's appeal. His counsel did not act unreasonably by, as Petitioner desired, moving to withdraw and filing an *Anders* brief to accompany that motion.

Petitioner has "fail[ed] to satisfy the heavy burden of proving ineffectiveness. [His] contentions are conclusory and fail to specify how [he] was prejudiced by any such alleged [failures]." *Lancaster*, 2015 WL 8074300, at *4.

### III.    Prosecutorial Misconduct

Petitioner argues the prosecutors at trial committed misconduct by presenting false testimony and violating *Brady* and *Giglio*. Prosecutorial misconduct is insufficient to overturn a conviction unless it "so infect[s] the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974).

Petitioner contends the prosecutor misled the Court by eliciting testimony that ICE Officers were attempting to take Petitioner's fingerprints when the assault occurred. Petitioner points to what he claims are inconsistencies in witness testimony at trial— Officer M.C. testified ICE Officers put handcuffs on Petitioner to "prep[ him] to go south, south meaning the detention facility in Texas," Trial Tr., 70, while Officer C.V. testified he was "trying to fix [Petitioner's] hand" after he was cuffed and was not "at that time" trying to "ink or place ink on his fingers." *Id.* at 90-91. Petitioner also points to Special Agent C.B.'s testimony at the preliminary hearing that Petitioner was handcuffed to obtain his

thumbprint on certain forms by force, Prelim. Hr'g Tr., 15-16,[9] and the testimony of Special Agent R.B at the grand jury proceedings, Grand Jury Tr., 5, 7. These inconsistencies are, according to Petitioner, so false and misleading that they raise questions as to the validity of the indictment and conviction.

A prosecutor violates the Due Process Clause if she "knowingly fail[s] to correct perjured testimony in [her] case, even when the evidence [goes] only to the credibility of the witness." *United States v. Garcia*, 793 F.3d 1194, 1207 (10th Cir. 2015) (citing *Napue v. Illinois*, 360 U.S. 264, 269 (1959)). Such a violation occurs when "(1) a government witness committed perjury, (2) the prosecution knew the testimony to be false, and (3) the testimony was material." *Id.* (citing *United States v. Caballero*, 277 F.3d 1235, 1243 (10th Cir. 2002)). "The false testimony is material 'unless failure to disclose [the perjury] would be harmless beyond a reasonable doubt.'" *Id.* (quoting *United States v. Bagley*, 473 U.S. 667, 680 (1985)). "[A] conviction obtained by the knowing use of perjured testimony is fundamentally unfair, and must be set aside if there is any reasonable likelihood that the false testimony could have affected judgment of the jury." *United States v. Agurs*, 427 U.S. 97, 103 (1976).

Petitioner insists the allegedly false theories as to why he was placed in handcuffs obscured the fact that ICE agents did so to obtain his signature by force. This, according to Petitioner, was against ICE Policy. This argument is deficient for a few reasons.

---

[9] Even if there were deficiencies in the preliminary hearing, they were mooted by the grand jury's indictment.

First, Petitioner has failed to credibly argue any of the testimony regarding why his hands were placed behind his back was perjured or that the prosecution knew it to be so. "It is not enough that there occurred at the trial mere inconsistencies or conflicts in the testimony of a witness or witnesses." *Smith v. Oklahoma*, 418 F. Supp. 907, 908 (W.D. Okla. June 1, 1976) (citing *Anderson v. United States*, 403 F.2d 451 (7th Cir. 1968)). "The existence of such conflicts or inconsistencies does not of itself support a conclusion of perjury much less the knowing use of perjured testimony." *Id.* (citing *Lauer v. United States*, 320 F.2d 187 (7th Cir. 1963)).

Second, even if the testimony was false, and Petitioner could establish the prosecution knowingly used it, "in light of the overwhelming evidence of guilt produced at trial and the relatively innocuous nature of the [testimony], there exists no reasonable likelihood" that the jury was prejudiced or that Petitioner's right to a fair and impartial trial was impaired. *Caballero*, 277 F.3d at 1246. Whether the officers were placing Petitioner's hands being his back to transport him south, to forcibly obtain his fingerprints for a form, or in reaction to the pre-assault indicators Petitioner was displaying, such testimony is immaterial to whether he assaulted the federal officers.

> In summary, the petitioner's contention is completely frivolous. The falsity of the testimony complained of cannot be established. The allegation of knowing use is wholly conclusory and speculative. The evidence of the inconsistency was available to and known to the defense. Finally it cannot be said that the inconsistent testimony "could . . . in any reasonable likelihood have affected the judgment of the jury . . ." *Napue*, 360 U.S. at 271.

*Smith*, 418 F. Supp. at 909 (citation modified).[10]

---

[10] *See also United States v. Gordon*, 657 F. App'x 773, 779 (10th Cir. 2016) (unpublished):

Next, Petitioner asserts the prosecutors committed *Brady*/*Giglio* violations by withholding the full surveillance videos both inside and outside of Petitioner's cell at the ERO, the full iPhone video, and the immigration forms ICE officers marked as "refused to sign." "To establish a *Brady* violation, the defendant must prove the prosecution suppressed evidence, the evidence was favorable to the defense, and the evidence was material." *United States v. Erickson*, 561 F.3d 1150, 1163 (10th Cir. 2009).

First, Petitioner concedes in his Reply that he is not addressing the video inside his cell. Doc. No. 212, at p. 22.

Second, with respect to the immigration forms, Petitioner has failed to demonstrate how they would be favorable to him. Petitioner insists that had the forms been produced at trial, he could have proved the ICE agents were not engaged in their official duties when the assault occurred. He proclaims the forms will prove no thumbprint is required in place

---

Gordon also claims the government knowingly presented the perjured testimony of several key factual witnesses at trial or failed to correct the false testimony when it occurred. As the judge properly concluded in denying this claim, "Gordon . . . points to nothing more than apparent inconsistencies in the witnesses' testimonies" which alone do not constitute perjury and fail to show the prosecution knew the testimony was false. (R. at 252.) *See Tapia v. Tansy*, 926 F.2d 1554, 1563 (10th Cir. 1991) ("Contradictions and changes in a witness's testimony alone do not constitute perjury and do not create an inference, let alone prove, that the prosecution knowingly presented perjured testimony."); *see also United States v. Frazier*, 429 F. App'x 730, 734 (10th Cir. 2011) (unpublished) ("Discrepancies in testimony are common, and can generally be explained as resulting from human failings short of intentional lying. To reverse Defendant's conviction on this ground would bring many, perhaps most, convictions into question. We will reserve such reversals for cases in which perjury and knowledge of perjury are either clear on the record or have been found by the lower court.").

21

of a signature. This is false. Officer M.C. testified at trial that the I-385 form required a thumbprint. ICE Policy permits force to be used to take a thumbprint on I-385 forms. Doc. No. 186-13. And in any event, the forms Petitioner needed to fill out were irrelevant to whether he assaulted the federal officers. The overwhelming evidence showed the jury the ICE Officers were engaged in their official duties when Petitioner initiated the assaults against them. Thus, had the forms been relevant to the issues at trial, and had they been produced to the jury, it would not have been favorable to Petitioner.

Third, the Court cannot credit Petitioner's conclusory assertions that portions of the (1) video of Petitioner outside his cell at the ERO and (2) the iPhone video were missing. The Government has repeatedly stated it produced all videos to Petitioner and his counsel. *See* Doc. Nos. 58, 207. Beyond Petitioner's vehement insistence that the videos were edited or portions of them were withheld, he offers no support for these proclamations.

Petitioner has failed to credibly establish any claims of prosecutorial misconduct that warrant relief pursuant to 28 U.S.C. § 2255.

## IV.    Judicial Abuse of Discretion

And finally, Petitioner asserts the Court abused its discretion by failing to ask the jurors about immigration bias, denying his requests for video evidence, providing an improper *Allen* charge, and denying Petitioner a new trial without addressing his allegations that the jury was denied access to immigration forms and full videos. The Court did not abuse its discretion in these matters for the reasons already discussed above.

Petitioner also asserts this Court abused its discretion by "suggesting to mislead the jury why petitioner was at the ERO office." Petitioner appears to be claiming that because

22

the first detainer under which he was held at the ERO was later cancelled, he was illegally arrested. The Court limiting evidence on this point was, according to Petitioner, an abuse of discretion that hid ICE's misconduct. As this Court has said many times, the reasons for Petitioner's presence at the ERO on the day of the assault were irrelevant to whether he assaulted federal officers. This Court did not abuse its discretion in cabining the testimony and evidence offered with respect to the ICE detainers and Petitioner's immigration status.

Accordingly, this Court did not abuse its discretion with respect to any of the above matters, and relief is not warranted on these grounds pursuant to 28 U.S.C. § 2255.

## V.    Petitioner's Other Motions

Petitioner has moved to expand the record under Rule 7(a) of the Rules Governing Section 2255 Proceedings: "If the petition is not dismissed, the judge may direct the parties to expand the record by submitting additional materials relating to the petition." Petitioner seeks (1) the chain of custody of the surveillance videos, (2) immigration forms marked "refused to sign," and (3) the full iPhone video. As this Court has already stated, the existing record clearly shows Petitioner is not entitled to relief. Moreover, the videos have already been produced in full. Petitioner has not demonstrated that a chain of custody is necessary or helpful to his claims. The immigration forms are irrelevant and would serve no purpose. Accordingly, an expansion of the record is not warranted and Petitioner's request is DENIED.

Petitioner has moved for this Court to recuse itself from his case pursuant to 28 U.S.C. § 455(a), (b)(1). "Any . . . judge . . . of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." § 455(a). "He

23

shall also disqualify himself . . . [w]here he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding." § 455(b)(1). The inquiry requires consideration of whether "sufficient factual grounds exist to cause a reasonable, objective person, knowing all the relevant facts, to question the judge's impartiality." *United States v. Pearson*, 203 F.3d 1243, 1277 (10th Cir. 2000) (citation omitted). "The standard is purely objective. The inquiry is limited to outward manifestations and reasonable inferences drawn therefrom." *United States v. Cooley*, 1 F.3d 985, 993 (10th Cir. 1993).

> Ordinarily, when a judge's words or actions are motivated by events originating within the context of judicial proceedings, they are insulated from charges of bias. Thus, adverse rulings cannot in themselves form the appropriate grounds for disqualification. Likewise, a judge's ordinary efforts at courtroom administration, even if stern and short-tempered, are "immune" from charges of bias and partiality. Although a judge's remarks during the course of a trial may be critical, disapproving, or hostile to a party, usually they will not support a partiality charge.

*United States v. Nickl*, 427 F.3d 1286, 1298 (10th Cir. 2005) (internal citations, quotation marks, and brackets omitted). "Judges not only have a strong duty to recuse when appropriate, but also a strong duty to sit, and the statute 'must *not* be so broadly construed that it becomes, in effect, presumptive, so that recusal is mandated upon the merest unsubstantiated suggestion of personal bias or prejudice.'" *United States v. Wells*, 873 F.3d 1241, 1251 (10th Cir. 2017) (quoting *Nichols v. Alley*, 71 F.3d 347, 351 (10th Cir. 1995)).

Petitioner claims this Court abused its discretion and violated his rights throughout the proceedings, including by misleading the jury regarding why Petitioner was at the ERO office, failing to ask jurors about immigration bias, and "assuming the role of the

24

prosecution" by remarking about sentencing guideline adjustment choices. Petitioner already raised these arguments in a previously filed Motion to Recuse [Doc. Nos. 153, 153-1]. This Court rejected those arguments, finding most of the allegations Petitioner made were premised on adverse rulings which cannot themselves form the basis for recusal [Doc. No. 156]. *Nickl*, 427 F.3d at 1298. The Court also found the remark about sentencing could not form the basis for recusal. *Id.* The Court will quote from its Order denying Petitioner's earlier Motion to Recuse:

> To connect these rulings and remarks to the undersigned's alleged partiality, Defendant implies knowledge and nefarious motive without any factual support. These conclusory allegations are insufficient to show partiality or bias, and therefore, Defendant's allegations do not warrant recusal.

Doc. No. 156, at pp. 2-3.

Petitioner also accuses the Court of giving a coercive *Allen* instruction to the jury off the record. The Court has already rejected this argument. The Court did not give an *Allen* charge. Petitioner's conclusory allegation of an *Allen* charge is insufficient to show partiality or bias and does not warrant recusal.

Finally, Petitioner asserts recusal is warranted because he has filed an ethical complaint against the Court. "Recusal in a court case is not required because the judge is the subject of a misconduct proceeding filed by a litigant in that case." *Smith v. Kan. Dep't of Corr.*, 455 F. App'x 841, 844 (10th Cir. 2011) (unpublished).

> "[Petitioner] thinks that the minute she filed the misconduct complaint against [the district court judge], he became obligated to step down from any case involving her, but this is not correct. She has not cited any rule or decision supporting the sweeping idea that a judge must automatically disqualify herself from a lawsuit simply because a disgruntled litigant currently alleges (or has previously alleged) judicial misconduct. Indeed, if

that were the rule, litigants displeased with Judge A's adverse rulings could easily manipulate the system by filing a misconduct complaint, thereby disqualifying Judge A from hearing the case, in the hopes that the case would then be assigned to Judge B who might be more sympathetic to their cause."

*Id.* (quoting *In re Mann*, 229 F.3d 657, 658-59 (7th Cir. 2000)). Merely because the undersigned is the subject of a misconduct proceeding does not warrant recusal. Accordingly, the Court finds that based on the totality of the allegations and circumstances, a reasonable, objective person would not question the undersigned's impartiality. Therefore, Defendant's Motion to Recuse is DENIED.

Finally, Defendant has also filed a Motion to Compel [Doc. No. 201] in which he asks the Court to compel the Government to provide the full surveillance video from outside his ERO holding cell. For the reasons already discussed, and the Government's continued assertions that it has provided all available footage, this request is DENIED.

Included in his Motion to Compel is Petitioner's request that this Court take judicial notice of "a new development in a civil action that he has since filed against the ICE agents that testified against him in this case. . . This judicial notice is a showing to the court that ICE agents have confessed by their failure to respond to the allegations in the civil action, that they were not engaged in their official duties on May 8, 2023, an element required to make a finding of guilt on assaulting federal officers." Doc. No. 201, at p. 2. Construing Petitioner's argument liberally, the Court takes him to be referencing another case he has filed in the Western District: *Wanjiku v. Kinnison, et al.*, No. 25-CV-00354-PRW (W.D. Okla. 2025). The record in that case reflects the Defendant ICE Officers did not respond to the allegations because they had not been served properly [No. 25-CV-00354, Doc. Nos.

22, 24, 27]. Petitioner was ordered to serve the Defendants by April 29, 2026 [No. 25-CV-00354, Doc. No. 27]. Petitioner has objected to that Order [No. 25-CV-00354, Doc. No. 29]. Even if it were proper to do so, at this point the Court cannot conclude the ICE Agents have admitted anything that might affect this Court's decision in determining the outcome of his § 2255 motion. Thus, Petitioner's request that this Court take judicial notice of something that has not happened is DENIED.

## CONCLUSION

Accordingly, Petitioner's Motion to Vacate [Doc. No. 186] is DENIED. The motions included in his Motion to Vacate are DENIED. His Motion to Compel [Doc. No. 201] is also DENIED.

Pursuant to Rule 11(a) of the Rules Governing Section 2255 Proceedings, the Court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant for habeas relief. A certificate of appealability may issue only if the applicant has made "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Where the district court rejects the claim on the merits, the petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). The Court finds this standard is not met in this case and a COA is therefore denied.

IT IS SO ORDERED this 6th day of May, 2026.

DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE